Citation Nr: 1434259 
Decision Date: 07/31/14 Archive Date: 08/04/14

DOCKET NO. 09-39 386 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Los Angeles, California


THE ISSUES

1. Entitlement to an initial rating in excess of 10 percent for degenerative disc disease of the lumbar spine with intervertebral disc syndrome (IVDS) prior to June 12, 2014, and a rating higher than 40 percent thereafter.

2. Entitlement to an initial compensable evaluation for lumbar radiculopathy of the bilateral lower extremities prior to September 24, 2013, and a rating higher than 20 percent thereafter.


REPRESENTATION

Appellant represented by: Veterans of Foreign Wars of the United States


ATTORNEY FOR THE BOARD

J. Taylor, Associate Counsel


INTRODUCTION

The Veteran served on active duty in the United States Air Force from August 1966 to September 1968.

This case comes before the Board of Veterans' Appeals (the Board) on appeal from a July 2007 decision of the Department of Veterans Affairs (VA) Appeals Management Center (AMC). Jurisdiction of the case is with the regional office (RO) in Los Angeles, California.

In a June 2014 rating decision, the Veteran's lumbar spine disability was increased to 40 percent disabling, effective June 12, 2014. However, as the Veteran has not been granted the maximum benefit allowed for his lumbar spine disability, and he has indicated that he wishes to continue his appeal, the claim is still active. See AB v. Brown, 6 Vet. App. 35, 38 (1993). Additionally, an October 2013 rating decision granted service connection for lumbar radiculopathy of the bilateral lower extremities, and assigned 20 percent evaluations, effective September 24, 2013. Although the Veteran did not specifically disagree with these ratings, the Board finds that lumbar radiculopathy of the bilateral lower extremities is part and parcel of the increased rating claim for the Veteran's lumbar spine disability. 38 C.F.R. § 4.71, General Rating Formula, Note 1. Thus, it is identified as a separate appeal issue on the cover page of this decision.

In April 2014, the Board remanded the Veteran's claim for further development. The requested actions were taken and the case has since been returned to the Board for adjudication. 

This is a paperless appeal located on the Veterans Benefits Management System (VBMS). Documents on the Virtual VA paperless claims processing system are either duplicative of the evidence of record or not pertinent to the present appeal. 


FINDINGS OF FACT

1. For the period prior to June 12, 2014, resolving all doubt in favor of the Veteran, the Veteran's degenerative disc disease of the lumbar spine manifested with loss of lateral spine motion and muscle spasm. Listing of the whole spine to the opposite side, positive Goldthwaite's sign, marked limitation of forward bending in standing position, loss of lateral motion with osteo-arthritic changes, or narrowing or irregularity of joint space, or some of the above with abnormal mobility on forced motion, did not manifest. 

2. For the period after June 12, 2014, the Veteran's degenerative disc disease of the lumbar spine with IVDS has been manifested by forward flexion of no more than 30 degrees; there is no evidence of favorable or unfavorable ankylosis, or incapacitating episodes having a total duration of 6 weeks during a 12-month period. Intervertebral disc disease that is pronounced in severity, with persistent symptoms compatible with sciatic neuropathy, with characteristic pain and demonstrable muscle spasm, absent ankle jerk, or other neurological findings appropriate to site of diseased disc, with little intermittent relief also did not manifest.

3. Resolving any doubt in the Veteran's favor, for the period prior to September 24, 2013, the Veteran's degenerative disc disease of the lumbar spine with IVDS involved mild lumbar radiculopathy of the right lower extremity; lumbar radiculopathy of the left lower extremity was not shown.

4. For the period after September 24, 2013, the Veteran's degenerative disc disease of the lumbar spine with IVDS involved moderate lumbar radiculopathy of both lower extremities; moderately severe lumbar radiculopathy is not shown.





CONCLUSIONS OF LAW

1. For the period prior to June 12, 2014, the criteria for an initial rating of 20 percent, and no more, for the Veteran's degenerative disc disease of the lumbar spine were met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107; 38 C.F.R. §§ 3.159, 3.321(b)(1), 4.1, 4.2, 4.6, 4.7, 4.10, 4.40, 4.45, 4.59 (2013); 38 C.F.R. § 4.71a, Diagnostic Code 5295 (2002), Diagnostic Codes 5235 to 5243 (2013).

2. For the period after June 12, 2014, the criteria for an increased rating higher than 40 percent for the Veteran's degenerative disc disease of the lumbar spine with IVDS have not been met. 38 U.S.C.A. §§ 1155, 5107(b) (West 2002); 38 C.F.R. §§ 4.7, 4.40, 4.45, 4.71a, Diagnostic Code 5295 (2002), Diagnostic Codes 5235 to 5243 (2013). 

3. Resolving all doubt in the Veteran's favor, for the period prior to September 24, 2013, the criteria for a 10 percent evaluation, and no more, for the Veteran's service-connected lumbar radiculopathy of the right lower extremity were met. 38 U.S.C.A. § 1155 (West 2002); 38 C.F.R. §§ 3.102, 3.159, 3.321, 4.1, 4.7, 4.20, 4.27, 4.40, 4.124a, Diagnostic Code 8520 (2013).

4. For the period prior to September 24, 2013, the criteria for a compensable evaluation for the Veteran's service-connected lumbar radiculopathy of the left lower extremity were not met. 38 U.S.C.A. § 1155 (West 2002); 38 C.F.R. §§ 3.102, 3.159, 3.321, 4.1, 4.7, 4.20, 4.27, 4.40, 4.124a, Diagnostic Code 8520 (2013).

5. For the period after September 24, 2013, the criteria for an evaluation in excess of 20 percent for the service-connected lumbar radiculopathy of the bilateral lower extremities, have not been met. 38 U.S.C.A. § 1155 (West 2002); 38 C.F.R. § 4.124a, Diagnostic Code 8520 (2013).



REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Stegall Concerns

As was alluded to in the Introduction, the Board remanded the Veteran's claim in April 2014 for additional evidentiary development. In particular, the Board instructed the RO to schedule the Veteran for a VA examination to determine the current nature and severity of his service-connected lumbar spine disability with radiculopathy. The Board also noted that, although the Veteran had recently been awarded separate ratings of 20 percent for radiculopathy in each lower extremity, that matter remained part and parcel of the claim on appeal. The Board instructed the agency of original jurisdiction to continue to consider the matter of radiculopathy in subsequent decisions. In June 2014, the RO provided the Veteran with a VA examination for his lumbar spine disability with radiculopathy. Thereafter, the RO readjudicated the Veteran's claim in an SSOC dated in June 2014. Although the disability ratings assigned for radiculopathy were not listed on the title page of the SSOC, it appears that the RO did consider the matter as part of its discussion therein.

Thus, the Board's prior remand instructions have been complied with for the purposes of this decision. See Stegall v. West, 11 Vet. App. 268, 271 (1998) (where the remand orders of the Board are not complied with, the Board errs as a matter of law when it fails to ensure compliance).

II. The Veterans Claims Assistance Act of 2000 (VCAA)

The VCAA, codified in part at 38 U.S.C.A. §§ 5103, 5103A, and implemented in part at 38 C.F.R § 3.159, amended VA's duties to notify and to assist a claimant in developing information and evidence necessary to substantiate a claim. 




 Duty to Notify

Under 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b), when VA receives a complete or substantially complete application for benefits, it will notify the claimant of (1) any information and medical or lay evidence that is necessary to substantiate the claim, (2) what portion of the information and evidence VA will obtain, and (3) what portion of the information and evidence the claimant is to provide. 

The VCAA notice requirements apply to all five elements of a service connection claim. The five elements are: (1) veteran status; (2) existence of a disability; (3) a connection between the veteran's service and the disability; (4) degree of disability; and (5) effective date of the disability. Dingess v. Nicholson, 19 Vet. App. 473 (2006).

In a claim for increase, the VCAA notice requirements are the type of evidence needed to substantiate the claim, namely, evidence demonstrating a worsening or increase in severity of the disability and the effect that worsening has on employment. Vazquez-Flores v. Shinseki, 580 F.3d 1270 (Fed. Cir. 2009) (interpreting 38 U.S.C.A. § 5103(a) as requiring generic claim-specific notice and rejecting veteran-specific notice as to effect on daily life and as to the assigned or a cross-referenced Diagnostic Code under which the disability is rated).

The VCAA notice must be provided to a claimant before the initial unfavorable adjudication by the RO. Pelegrini v. Principi, 18 Vet. App. 112 (2004). 

The RO provided pre-adjudication VCAA notice by letters dated in March 2002 and August 2002. These letters notified the Veteran of the evidence needed to substantiate the claim for service connection, as well as what information and evidence must be submitted by the Veteran, what information and evidence would be obtained by VA, and the provisions for disability ratings and for the effective date of the claim. 

Where, as here, service connection has been granted and initial ratings have been assigned, the claims of service connection have been more than substantiated, the claims have been proven, thereby rendering 38 U.S.C.A. §5103(a) notice no longer required because the purpose that the notice was intended to serve has been fulfilled. Once the claim of service connection has been substantiated, the filing of a notice of disagreement with the RO's decision rating the disabilities does not trigger additional 38 U.S.C.A. § 5103(a) notice. Therefore, further VCAA notice under 38 U.S.C.A. § 5103(a) and § 3.159(b)(1) is no longer applicable in the claim for an initial higher rating. Dingess, 19 Vet. App. 473; Dunlap v. Nicholson, 21 Vet. App. 112, 116-117 (2007); Goodwin v. Peake, 22 Vet. App. 128, 136 (2008). 

 Duty to Assist

VA has fulfilled its duty to assist in obtaining identified and available evidence needed to substantiate the claims. Service treatment records, post-service treatment records, and lay statements have been associated with the record. 

Additionally, during the appeal period, the Veteran was afforded VA examinations in April 2007, July 2009, and June 2014. The Board has carefully reviewed the VA examinations of record and finds that the examinations, along with the other evidence of record, are adequate for rating purposes. Thus, with respect to the Veteran's claim, there is no additional evidence which needs to be obtained. 

As the Veteran has not identified any additional evidence pertinent to the claim and as there are no additional records to obtain, the Board concludes that no further assistance to the Veteran in developing the facts pertinent to the claim is required to comply with the duty to assist.




III. Rating Principles

A disability rating is determined by the application of VA's Schedule for Rating Disabilities (Rating Schedule), 38 C.F.R. Part 4. The percentage ratings contained in the Rating Schedule represent, as far as can be practicably determined, the average impairment in earning capacity resulting from diseases and injuries incurred or aggravated during military service and their residual conditions in civil occupations. Separate diagnostic codes identify the various disabilities. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1. 

VA has a duty to acknowledge and consider all regulations that are potentially applicable through the assertions and issues raised in the record, and to explain the reasons and bases for its conclusions. Schafrath v. Derwinski, 1 Vet. App. 589 (1991).

Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. 

The Board will consider whether separate ratings may be assigned for separate periods of time based on facts found, a practice known as "staged ratings," whether it is an initial rating case or not. Fenderson v. West, 12 Vet. App. 119, 126-27 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2007).

IV. Lumbar Spine Disability

In evaluating musculoskeletal disabilities, the VA must determine whether pain could significantly limit functional ability during flare-ups, or when the joints are used repeatedly over a period of time. See DeLuca, 8 Vet. App. at 206. 

Under 38 C.F.R. § 4.59, painful motion is a factor to be considered with any form of arthritis; however 38 C.F.R. § 4.59 is not limited to disabilities involving arthritis. See Burton v. Shinseki, 25 Vet. App. 1 (2011). The Court also has recently held, that "pain itself does not rise to the level of functional loss as contemplated by VA regulations applicable to the musculoskeletal system." Mitchell v. Shinseki, 25 Vet. App. 32, 38 (2011). Rather, pain, may result in functional loss, but only if it limits the ability "to perform the normal working movements of the body with normal excursion, strength, speed, coordination [, or] endurance." Id., quoting 38 C.F.R. § 4.40.

The Board notes that, during the pendency of this appeal, regulatory changes amended the VA Schedule for Rating Disabilities, 38 C.F.R. Part 4 (2002), including the rating criteria for evaluating disabilities of the lumbar spine. Effective September 23, 2002, VA revised the criteria for diagnosing and evaluating intervertebral disc syndrome. 67 Fed. Reg. 54,345 (Aug. 22, 2002). Effective September 26, 2003, VA revised the criteria for evaluating general diseases and injuries of the spine. 68 Fed. Reg. 51,454 (Aug. 27, 2003). At that time, VA also reiterated the earlier changes to DC 5293 (now reclassified as DC 5243) for intervertebral disc syndrome.

The RO considered all these changes in adjudicating the Veteran's claim, as then applicable. Therefore, there is no prejudice to the Veteran by this Board decision. See Bernard v. Brown, 4 Vet. App. 384 (1993). 

The current spine rating criteria became effective on September 26, 2003. See 68 Fed. Reg. 51,454 (August 27, 2003). The Board notes, however, that the Veteran's rating period started in February 2002. The current criteria may only be applied prospectively from that date; they cannot be applied to a period prior to their effective date of September 26, 2003. The old rating criteria, however, may be applied throughout the period of the appeal, if they are deemed more favorable to the Veteran. 38 U.S.C.A. § 5110(g); VA O.G.C. Prec. Op. No. 7-2003 (Nov. 19, 2003); VA O.G.C. Prec. Op. No. 3-2000 (April 10, 2000); see generally Karnas v. Derwinski, 1 Vet. App. 308 (1991); but cf. Princess Cruises v. United States, 397 F.3d 1358 (Fed. Cir. 2005) and Kuzma v. Principi, 341 F.3d 132 (Fed. Cir. 2003). Thus, VA will review the Veteran's appeal under both the prior and current criteria. 

Prior to September 23, 2002, a 10 percent rating was warranted for mild intervertebral disc syndrome. A 20 percent rating was warranted for moderate intervertebral disc syndrome with recurring attacks. A 40 percent rating was warranted for severe intervertebral disc syndrome with recurring attacks, with intermittent relief. A 60 percent rating was warranted for pronounced intervertebral disc syndrome with persistent symptoms compatible with sciatic neuropathy with characteristic pain and demonstrable muscle spasm, absent ankle jerk, or other neurological findings appropriate to site of diseased disc, and little intermittent relief. 38 C.F.R. § 4.71a , Diagnostic Code 5293 (2002).

Effective September 23, 2002, the rating criteria for intervertebral disc syndrome were amended to evaluate the disorder either on the total duration of incapacitating episodes resulting from intervertebral disc syndrome over the past 12 months, or by combining under 38 C.F.R. § 4.25 separate evaluations of its chronic orthopedic and neurologic manifestations along with evaluations for all other disabilities, whichever method results in the higher evaluation. 

Prior to September 26, 2003, the criteria in effect for lumbosacral strain provided for a 10 percent rating for characteristic pain on motion. A 20 percent rating is warranted where there is evidence of muscle spasm on extreme forward bending, loss of lateral spine motion, unilateral, in standing position. The maximum rating of 40 percent is warranted where the symptoms are severe, with listing of the whole spine to the opposite side, positive Goldwaithe's sign, marked limitation of forward bending in standing position, loss of lateral motion with osteo-athritic changes, or narrowing or irregularity of joint space, or some of the above with abnormal mobility on forced motion. 38 C.F.R. § 4.71a, DC 5295 (2002).

Prior to September 26, 2003, the criteria in effect for limitation of motion in the lumbar spine provided a 10 percent rating for slight limitation of motion of the lumbar spine; a 20 percent rating for moderate limitation of motion of the lumbar spine, and a 40 percent rating for severe limitation of motion of the lumbar spine. 38 C.F.R. § 4.71a, Diagnostic Code 5292. The 40 percent rating is also the maximum available under this diagnostic code.

Words such as "moderate," "moderately severe" and "severe" are not defined in the Rating Schedule. Rather than applying a mechanical formula, the Board must evaluate all of the evidence to the end that its decisions are "equitable and just." 38 C.F.R. 4.6. Use of terminology such as "severe" by VA examiners and others, although evidence to be considered by the Board, is not dispositive of an issue. All evidence must be evaluated in arriving at a decision regarding an increased rating. 38 C.F.R. §§ 4.2 and 4.6.

Effective from September 26, 2003, disabilities of the thoracolumbar spine are to be rated under the General Rating Formula for Diseases and Injuries of the Spine. See 38 C.F.R. § 4.71a, DCs 5235-5243 (2013). Under the General Rating Formula (for Diagnostic Codes 5235 to 5243 unless 5243 is evaluated under the Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes), a 10 percent disability rating is warranted for forward flexion of the thoracolumbar spine greater than 60 degrees but not greater than 85 degrees; or, forward flexion of the cervical spine greater than 30 degrees but not greater than 40 degrees; or, combined range of motion of the thoracolumbar spine greater than 120 degrees but not greater than 235 degrees; or combined range of motion of the cervical spine greater than 170 degrees but not greater than 335 degrees; or, muscle spasm, guarding, or localized tenderness not resulting in abnormal gait or abnormal spinal contour; or vertebral body fracture with loss of 50 percent or more of the height. A 20 percent disability rating is warranted for forward flexion of the thoracolumbar spine greater than 30 degrees but not greater than 60 degrees; or, forward flexion of the cervical spine greater than 15 degrees but not greater than 30 degrees; or combined range of motion of the thoracolumbar spine not greater than 120 degrees; or, combined range of motion of the cervical spine not greater than 170 degrees; or muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. A 30 percent disability rating is assigned for forward flexion of the cervical spine 15 degrees or less; or, favorable ankylosis of the entire cervical spine; a 40 percent disability rating is assigned for unfavorable ankylosis of the entire cervical spine; or, forward flexion of the thoracolumbar spine 30 degrees or less; or, favorable ankylosis of the entire thoracolumbar spine; a 50 percent disability rating is assigned for unfavorable ankylosis of the entire thoracolumbar spine; and a 100 percent disability rating is assigned for unfavorable ankylosis of entire spine. 38 C.F.R. § 4.71a.

When rating according to the General Formula, any associated objective neurologic abnormalities are rated separately under their respective diagnostic codes. See 38 C.F.R. § 4.71a, General Rating Formula for Diseases and Injuries of the Spine, Note (1).

The normal findings for range of motion of the lumbar spine are flexion to 90 degrees, extension to 30 degrees, lateral flexion, right and left, to 30 degrees, and rotation, right and left, to 30 degrees. 38 C.F.R. § 4.71a, Plate V.

Under the Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes, a 10 percent disability rating is warranted when there are incapacitating episodes having a total duration of at least 1 week but less than 2 weeks during the past 12 months; a 20 percent disability rating is warranted when there are incapacitating episodes having a total duration of at least 2 weeks but less than 4 weeks during the past 12 months; a 40 percent disability rating is warranted when there are incapacitating episodes having a total duration of at least 4 weeks but less than 6 weeks during the past 12 months; and a 60 percent disability rating is warranted when there are incapacitating episodes having a total duration of at least 6 weeks during the past 12 months. An "incapacitating episode" is a period of acute signs and symptoms due to intervertebral disc syndrome that requires bed rest prescribed by a physician and treatment by a physician. 38 C.F.R. § 4.71a, Diagnostic Code 5243. 

 Factual Background

Historically, a July 2007 rating decision granted service connection for degenerative disc disease of the lumbar spine. The RO assigned a 10 percent evaluation, effective February 19, 2002. In October 2007, the Veteran disagreed with the rating assigned. A June 2014 rating decision increased the disability evaluation to 40 percent under DC 5242-5243 based on forward flexion of the thoracolumbar spine 30 degrees or less and incapacitating episodes having a total duration of at least four weeks but less than six weeks during the past 12 months, effective June 12, 2014, the date of a VA examination that the RO determined had shown a worsening of his disability. The claim for a higher disability rating for the spine now encompasses the issues of an initial rating higher than 10 percent prior to June 12, 2014, and a rating higher than 40 percent thereafter. Additionally, in October 2013, the RO granted service connection for lumbar radiculopathy of the bilateral lower extremities, and assigned 20 percent evaluations, effective September 24, 2013. The Veteran claims that he is entitled to a higher rating for his lumbar spine disability.

Private treatment records from Dr. H. showed treatment for low back pain in September 1998. In December 2000, fixations were noted in the L4 and L5 lumbar region. In 2001, the Veteran was primarily treated for pain in his neck and arms, which improved. In March 2001, fixations in the L4 and L5 lumbar spine were noted.

X-ray imaging from Raytel Medical Imaging dated in May 1998 revealed mild disc space narrowing at L5-S1, probable mild S-shaped scoliosis of the cervical, thoracic, and lumbar spine, and transitional segment at the lumbosacral junction. X-ray imaging of the lumbar spine in December 2000 showed mild degenerative changes of the lower lumbar spine and L5 sacralization. There was no lumbar compression fracture.

VA outpatient treatment records dated from July 2002 through January 2005 showed treatment for chronic low back pain in February 2001. The examination of the Veteran's back was essentially normal. 

In a VA examination dated in April 2007, the examiner noted that in June or July 1968, while the Veteran was working on a C-130, he was blown off a wing. The examiner noted that the Veteran fell on metal steps and landed on his back. The Veteran has complained of back pain since this incident. He required six months of bed rest, returned to light duty, and was eventually discharged from service. A lumbar spine x-ray in July 1968 was normal. The Veteran reported chronic low back pain since his discharge. He noted chronic, daily pain varying from 2/10 to 10/10. The Veteran noted that on a few occasions, the pain would require a few days of bed rest. He noted that the pain occasionally radiated down his right leg. The Veteran indicated that he chose a profession which avoided heavy lifting. The examiner noted that a December 2000 x-ray showed some mild spurring of L4-5 anteriorly and some mild disc disease at L4-5. Magnetic resonance imaging performed in 2002 revealed moderate degenerative disc disease at L5-S1 with grade 1 retrolisthesis of L5 on S1 with a posterior annular tear and small anterior disc protrusion. There was no spinal canal stenosis. There was a transitional vertebra at the lumbosacral junction and a mild disc bulge at L4-5. The examiner noted that the Veteran had been seen by a chiropractor in the past, with improvement. The Veteran reported use of Vicodin, ibuprofen, and herbal medications.

On examination, the Veteran's gait was normal. His forward flexion was to 65 degrees; his extension was to 18 degrees; his right lateral flexion was to 14 degrees; his left lateral flexion was to 10 degrees; his right rotation was to 35 degrees; and his left rotation was to 32 degrees. The Veteran had straightening of the lumbosacral spine and some tenderness and spasm of the right lower back. There were no fasciculations; however, there was some mild decreased strength of the hip flexors and knee extensors. The Veteran was able to stand on his heels and toes. The sensory examination was grossly intact. Deep tendon reflexes were 1+ and equal in the knees and 2+ and equal in the ankles. There was no evidence of clonus. The examiner diagnosed the Veteran with moderate degenerative disc disease of L5-S1 and mild retrolisthesis of L5-S1 and mild L5-S1 neural foraminal narrowing.

In a statement dated in May 2007, the Veteran indicated that he experienced varying degrees of pain in his low back. He noted that sometimes driving was almost impossible due to extreme back pain. He indicated that he had been placed on pain medication and muscle relaxers to ease his pain. He reported that he could only work one to two days a week before his back condition was aggravated. He noted that he was not able to work effectively while taking the medications.

In a record of emergency room treatment from Sierra Vista Regional Medical Center dated in October 2005, the Veteran reported that the previous day, he felt something pop in his back when twisting. He reported pain in his right lower back radiating down his leg. He described his pain as 5/10, and described it as "aching" and "shooting." There were no neurological deficits noted, except reported tingling to the right foot. The clinical impression was acute sciatica. The Veteran was treated with Methocarbamol for pain relief.

In an October 2007 statement, the Veteran reported seeing a chiropractor twice a week for his low back pain. He also indicated that he was medicated for low back pain and muscle spasm on a regular basis. He claimed that his symptoms warranted a 40 percent evaluation.

In a VA outpatient treatment record dated in August 2008, the Veteran complained of back pain. He reported treatment by a chiropractor every two weeks. He described pain on the right side of the lower back. He noted some radicular pain into the right lower extremity. He noted that he was still doing photography and yoga weekly.

In private treatment records from California Wellness Center/Health in Motion Chiropractic Center, the Veteran complained of low back pain. He described the pain as dull and sharp, with an intensity of 4/10. The Veteran also reported radiation to the right knee. The records showed an assessment of lower back spondylosis. They also documented chiropractic treatment.

In a letter dated in August 2009, the Veteran's chiropractor wrote that the Veteran continued to experience bouts of chronic lower back pain, neck pain, and headaches. He indicated that through the use of chiropractic care, the Veteran was able to avoid surgery and the use of chronic pain medication. The chiropractor noted, however, that due to the frequent exacerbations of spinal pain (approximately 1-2 times per month), the Veteran was often rendered unable to complete his workday without receiving treatment.

In a VA examination dated in July 2009, the Veteran reported being able to walk 3,000 feet in approximately 45 minutes. He denied a history of falls. He reported the following symptoms associated with his lumbar spine condition: stiffness, fatigue, spasms, decreased motion, paresthesia, and numbness. He reported a weakness of the spine, leg, and foot. He denied bowel or bladder problems. He reported erectile dysfunction. He described constant, severe pain up and down his back. He indicated that the pain was spontaneous, and was exacerbated by physical activity and stress. He noted that it was relieved by rest and Vicodin. He indicated that at the time of pain, he could function with medication. The Veteran reported flare-ups, trouble with balance, and limitation of motion or "stiff back." He denied hospitalizations or surgery. He reported an inability to work full time or stand or sit for long periods.

On examination, the Veteran's posture and gait were normal. His walking was steady, and he did not require any assistive devices for ambulation. There was no evidence of radiating pain on movement. There was muscle spasm at the L-S muscles. The muscle spasm did not produce an abnormal gait. There was tenderness at the L-S muscles, however, the spinal contour was preserved. There was no guarding or weakness. Muscle tone and musculature were normal. The straight leg raise test was negative. Lasegue's sign was negative. There was no atrophy present in the limbs. There was no ankylosis of the thoracolumbar spine. Flexion was to 80 degrees, with pain at 75 degrees. Extension was to 20 degrees with pain. Right and left lateral flexion were to 20 degrees, with pain. Right and left lateral rotation were to 20 degrees, with pain. Repetitive range of motion was possible with no additional degree of limitation. The joint function of the spine was not additionally limited by pain, fatigue, weakness, lack of endurance, or incoordination after repetitive use. There were no sensory deficits from L1-L5 or S1. There was no lumbosacral motor weakness. The right and left lower extremities revealed knee jerk 2+ and ankle jerk 2+. There were no signs of pathologic reflexes. Cutaneous reflexes were normal. There were no signs of lumbar intervertebral disc syndrome. The examiner diagnosed the Veteran with degenerative disc disease of the lumbar spine. The subjective factor was low back pain, and the objective factor was pain on range of motion. The examiner also noted limited bending, lifting, pushing, pulling, prolonged standing or sitting.

Treatment records from Aspire Physical Therapy revealed that the Veteran has received physical therapy for the back and neck. In September 2009, the Veteran reported back pain 8-9/10. He noted that it radiated down his right leg. In October 2009, following physical therapy, the Veteran had improved extension, less frequent back pain, and increased range of motion.

In VA outpatient treatment records dated from August 2009 to September 2009, the Veteran was treated for chronic low back pain.

In private treatment records from Sierra Vista Regional Medical Center dated in August 2011, the Veteran reported chronic neck and back pain. On examination, pain and tenderness were noted along the right lumbar 3-4 paraspinal muscle areas. There was a normal heel and toe walk, without weakness. The straight leg raise test caused no pain and was negative; however, the Veteran reported some hamstring tightness. The Veteran had decreased range of motion, and was only able to flex to touch his mid-tibia. He had normal extension. The assessment was lumbar radiculopathy. The Veteran denied lower extremity weakness, bowel or bladder incontinence, lower extremity dysesthesias or paresthesias, or saddle anesthesia. Movements that seemed to worsen pain were flexion and rotation. He had normal light touch sensation to the bilateral lower extremities. A January 2013 lumbar spine MRI revealed an L5-S1 bulge with a small central protrusion resulting in mild central canal narrowing; an L4-5 bulge asymmetric to the right with mild central canal narrowing; and an L2-3 bulge with minimal central canal narrowing.

In a rating decision dated in October 2013, the RO granted service connection for bilateral lower extremity radiculopathy, and assigned 20 percent evaluations, effective September 24, 2013.

VA outpatient treatment records from February 2001 to February 2014 showed treatment for low back pain. In September 2010, the Veteran complained of back pain and pain traveling to the back of the right knee. In February 2011, the Veteran reported an on and off history of back pain. There was no spinal tenderness, and his strength and sensation were intact. In June 2011, the Veteran complained of back pain. In September 2012, the Veteran complained of chronic low back pain, which radiated to the legs. In September 2013, the Veteran complained of constant back pain. In January 2014, the Veteran indicated that his back pain was worsening. In February 2014, the Veteran complained of back pain. He noted that he had to go to the emergency room the other week due to severe pain in his left groin. He reported that his back pain radiated down his right lateral thigh with associated foot numbness. He indicated that he took Vicodin for pain and used a heating pad. He denied bowel or bladder issues. The assessment was chronic back pain with radiculopathy into the right lower extremity, which possibly represented L5 radiculopathy based on imaging and history. It was noted that the newer left groin pain was of an unclear etiology, and possibly represented a new higher lumbar radiculopathy versus a local groin issue.

In a VA examination dated in June 2014, the Veteran was diagnosed with degenerative disc disease, bilateral lower extremity radiculopathy, and intervertebral disc syndrome. The Veteran reported frequent flare-ups, with 10/10 lower back pain, mostly to the right side, every other day. His flexion was to 25 degrees, with pain. His extension was to 20 degrees, with pain. His right lateral flexion was to 20 degrees, with pain. His left lateral flexion was to 15 degrees, with pain. His right lateral rotation was to 15 degrees, with pain. His left lateral rotation was to 10 degrees, with pain. The Veteran was able to perform repetitive-use testing with three repetitions with no decrease in range of motion. The Veteran's functional impairment included less movement than normal, weakened movement, and pain on movement. The Veteran reported difficulty with heavy lifting and prolonged sitting/standing due to pain. The examiner noted that there was an additional five degrees of loss of motion due to flare-ups in all planes. 

There was tenderness to the right lower back, over the iliac crest. There was no guarding or muscle spasm. The Veteran did not have muscle atrophy. Muscle strength was 3/5 in the right hip, right knee, and right ankle. Muscle strength was 4/5 in the left hip, left knee, and right toe. Muscle strength was 5/5 in the right and left ankle plantar flexion, left ankle dorsiflexion, and left toe. Deep tendon reflexes were 3+. Sensation was decreased in the right lower leg/ankle and the right foot/toes. The right foot was absent monofilament sensation, but vibration was intact bilaterally. The straight leg raise test was negative. The Veteran had the following symptoms due to radiculopathy: mild intermittent pain, mild paresthesias and/or dysesthesias, and mild numbness in the bilateral lower extremities. There were no other neurologic abnormalities. The examiner noted that the Veteran had IVDS of the thoracolumbar spine. He noted at least four weeks of incapacitating episodes, but less than six weeks over the past 12 months. The Veteran denied use of assistive devices for ambulation. The Veteran did not attend the scheduled June 2014 lumbosacral spine radiograph. The examiner noted that the Veteran's spine condition limited his ability to work, in that he was limited in bending, twisting, and tilting on an occasional basis. The examiner found that the Veteran was able to perform light physical and sedentary work.

In a June 2014 rating decision, the RO increased the Veteran's degenerative disc disease with IVDS to 40 percent, effective June 12, 2014, the date of the VA examination showing worsening.

 Analysis

From February 19, 2002, to June 12, 2014

As noted earlier, the July 2007 rating decision assigned a 10 percent evaluation based on characteristic pain on motion, effective February 19, 2002. The Board finds that for this entire time period, when DC 5295 of the prior criteria is applied, the objective findings on clinical examination show the Veteran manifested loss of lateral motion and muscle spasm, which warrants a 20 percent rating. 38 C.F.R. § 4.71a, DC 5295 (2002). In particular, muscle spasm was noted in the April 2007 and July 2009 VA examinations. Additionally, loss of lateral motion was shown in the April 2007 and July 2009 VA examinations. The Board finds, however, that the Veteran's degenerative disc disease of the lumbar spine did not meet the criteria for a 40 percent rating under DC 5295 during this period. There was no objective evidence of listing of the whole spine to the opposite side, positive Goldthwaite's sign, marked limitation of forward bending in standing position, loss of lateral motion with osteo-arthritic changes, or narrowing or irregularity of joint space, or some of the above with abnormal mobility on forced motion.

The Board has also considered whether a higher rating was warranted under any other Diagnostic Code for the spine during this period. The Board finds that for this entire time period (February 19, 2002, to June 12, 2014), the Veteran's degenerative disc disease of the lumbar spine did not meet the criteria for a higher rating under DC 5292 of the prior criteria, which rates limitation of motion of the lumbar spine. See 38 C.F.R. § 4.71a (2002). In short, the Veteran's range of motion findings discussed above would be equivalent to normal to slight (or moderate at most, considering lateral flexion and rotation) limitation of motion of the lumbar spine. That is, such findings support a 10 percent (or 20 percent at most) rating for the lumbar spine, under DC 5292. It is further noted that the examiners indicated that the range of motion findings were with consideration of pain, fatigue, weakness, lack of endurance, and incoordination, altered by repetition. 38 C.F.R. §§ 4.40, 4.45; DeLuca v. Brown, 8 Vet. App. 202 (1995). Thus, an initial rating higher than 20 percent would not be in order. 

Because there is no showing of vertebral fracture or ankylosis, Diagnostic Codes 5285, 5286 and 5289 are not for application. 

As for whether a higher rating is warranted for intervertebral disc syndrome under the pre-amended Diagnostic Code 5293, there is no objective evidence of severe disc syndrome with recurring attacks with intermittent relief. First, the Board notes that there is conflicting evidence on whether the Veteran even has intervertebral disc syndrome. For example, in the July 2009 VA examination, the examiner noted that there were no signs of lumbar intervertebral disc syndrome, whereas in the June 2014 VA examination, the examiner indicated that the Veteran had intervertebral disc syndrome. Even assuming the Veteran had intervertebral disc syndrome during this period, the evidence of record does not reflect that the Veteran had severe intervertebral disc syndrome with recurring attacks with intermittent relief. The Veteran has been diagnosed with moderate degenerative disc disease in treatment records, and the VA examination reports did not reveal any evidence of recurring attacks or that the disability rose to the level of severe. As noted above, the Veteran still maintained much of the function of his back even with his complaints of pain. In light of the foregoing, prior to June 12, 2014, an initial rating in excess of 20 percent is not in order under DC 5293. 

As for whether a higher rating is warranted under the criteria for orthopedic manifestations under the General Rating Formula, for the period after September 26, 2003, considering pain and functional loss due to pain, flexion was at most limited to 65 degrees. These findings do not more nearly approximate or equate to limitation of flexion of the thoracolumbar spine 30 degrees or less, when considering additional functional loss due to pain, pain on movement, swelling, atrophy, fatigue, weakness, incoordination, to include during flare-ups and with repeated use. 38 C.F.R. §§ 4.40, 4.45, 4.59; DeLuca v. Brown, 8 Vet. App. 202 (1995). As limitation of flexion does not more nearly approximate to 30 degrees or less, and there is no evidence of ankylosis, a rating higher than 20 percent is not warranted under the General Rating Formula. 

The Board also finds that there is no basis for the assignment of any higher rating based on consideration of any of the factors addressed in 38 C.F.R. §§ 4.40, 4.45 and DeLuca, 8 Vet. App. at 204-7. Competent medical evidence reflects that the currently assigned 20 percent rating properly compensates the Veteran for the extent of functional loss resulting from any such symptoms. The July 2009 examiner found that repetitive range of motion was possible with no additional degree of limitation and the joint function of the spine was not additionally limited by pain, fatigue, weakness, lack of endurance or incoordination after repetitive use. Thus, the Board finds that the 20 percent evaluation assigned adequately portrays any functional impairment, pain, and weakness that the Veteran experiences as a consequence of his degenerative disc disease of the lumbar spine.

As for whether a higher rating is warranted for intervertebral disc syndrome under Diagnostic Code 5243 (Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes), for the period between September 23, 2002, and June 12, 2014, there is no evidence, either lay or medical, of incapacitating episodes, that is, bed rest prescribed by a physician and treatment by a physician, having a total duration of at least 4 weeks but less than 6 weeks during a 12 month period. Moreover, as noted above, in the July 2009 VA examination, there were no signs of lumbar intervertebral disc syndrome.

In summary, the Board finds that an evaluation of 20 percent, but no more, is warranted from February 19, 2002, to June 12, 2014, for the Veteran's service-connected degenerative disc disease of the lumbar spine. 

After June 12, 2014

As noted earlier, the June 2014 rating decision assigned a 40 percent evaluation based on forward flexion of the thoracolumbar spine 30 degrees or less and incapacitating episodes having a total duration of at least four weeks but less than six weeks during the past 12 months under DC 5242-5243, effective June 12, 2014. 

As to consideration under the prior rating criteria, under Diagnostic Codes 5292 and 5295, the maximum evaluation available is 40 percent. As such, these Code sections cannot serve as bases for higher evaluations here. Additionally, because there is no showing of vertebral fracture or ankylosis, Diagnostic Codes 5285, 5286 and 5289 are not for application. The only remaining relevant provision under the prior rating criteria for consideration is Diagnostic Code 5293, pertaining to intervertebral disc syndrome. Under that Code section, a 60 percent rating is warranted for pronounced impairment, with persistent symptoms compatible with sciatic neuropathy, with characteristic pain and demonstrable muscle spasm, absent ankle jerk, or other neurological findings appropriate to site of diseased disc, with little intermittent relief. 

As for whether a higher rating is warranted for intervertebral disc syndrome under the pre-amended Diagnostic Code 5293, there is no showing of neurological impairment due to pronounced intervertebral disc syndrome. 38 C.F.R. § 4.71a, Diagnostic Code 5293. In this regard, the Board notes that the Veteran's June 2014 VA examination reflected complaints of frequent flare-ups of back pain, with pain radiating into the right lower extremity with occasional weakness. The Veteran did not have muscle atrophy. Muscle strength was 3/5 in the right hip, knee, and ankle. Muscle strength was 4/5 in the left hip, left knee, and right toe. Muscle strength was 5/5 in the right and left ankle plantar flexion, left ankle dorsiflexion, and left toe. Deep tendon reflexes were 3+. Sensation was decreased in the right lower leg/ankle and the right foot/toes. The Veteran's right foot was absent monofilament sensation, but vibration was intact bilaterally. The straight leg raise test was negative. The Veteran had the following symptoms due to radiculopathy: mild intermittent pain, mild paresthesias and/or dyesthesias, and mild numbness in the bilateral lower extremities. There were no other neurologic abnormalities. Thus, although the record does reference complaints of radicular symptoms with mild intermittent pain, paresthesias, and numbness, these symptoms are not consistent with intervertebral disc disease that is pronounced in severity, with persistent symptoms compatible with sciatic neuropathy, with characteristic pain and demonstrable muscle spasm, absent ankle jerk, or other neurological findings appropriate to site of diseased disc, with little intermittent relief, so as to warrant an increased evaluation of 60 percent under Diagnostic Code 5293. 

Regarding the criteria for orthopedic manifestations under the General Rating Formula, the Board observes that while the Veteran has reduced range of motion, in the most recent VA examination dated in June 2014, flexion was still possible, and the examination did not demonstrate ankylosis. In particular, in the June 2014 VA examination, the Veteran's flexion was to 25 degrees, with pain. The Veteran was able to perform repetitive-use testing with three repetitions with no decrease in range of motion. The examiner also noted that there was an additional five degrees of loss of motion due to flare-ups in all planes. These findings therefore do not more nearly approximate or equate to unfavorable ankylosis, when considering additional functional loss due to pain, pain on movement, swelling, atrophy, fatigue, weakness, incoordination, to include during flare-ups and with repeated use. 38 C.F.R. §§ 4.40, 4.45, 4.59; DeLuca v. Brown, 8 Vet. App. 202 (1995). As there is no evidence of ankylosis, a rating higher than 40 percent is not warranted under the General Rating Formula. 

As for a higher rating under Diagnostic Code 5243 for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes, the Board finds that there is no evidence that the Veteran was prescribed bed rest of at least six weeks during any 12 month period on appeal, which is required for a 60 percent rating under the Incapacitating Episodes Formula. Specifically, the June 2014 VA examiner noted at least four weeks of incapacitating episodes, but less than six weeks over the past 12 months. Thus, the Board finds that the Veteran does not meet the criteria for the next higher rating of 60 percent under Diagnostic Code 5243. 

As to whether additional compensation for neurological impairment is warranted, the General Rating Formula requires consideration of neurological findings, to include bladder or bowel impairment, separate from orthopedic manifestations. As discussed above, in an October 2013 rating decision, the RO granted service connection for bilateral lower extremity radiculopathy and assigned separate ratings. Thus, those matters are not for consideration here. Additionally, there have not been any other neurological findings, to include bladder or bowel impairment, during the appeal period.

The Board has also considered the Veteran's statements that describe his pain. The Veteran is certainly competent to describe his observations and the Board finds that his statements are credible. However, the Board finds that the objective medical findings do not support a rating higher than 40 percent for the service-connected degenerative disc disease with IVDS.

Accordingly, the preponderance of the evidence is against assignment of a rating higher than 40 percent after June 12, 2014, for the Veteran's service-connected degenerative disc disease with IVDS. As the greater weight of evidence is against the claim, there is no doubt on this matter that could be resolved in his favor.

V. Lumbar Radiculopathy of the Bilateral Lower Extremities

As noted above, an October 2013 rating decision granted service connection for the Veteran's lumbar radiculopathy of the bilateral lower extremities, and assigned 20 percent evaluations from September 24, 2013. Although the Veteran did not specifically disagree with these ratings, the Board finds that the service-connected lumbar radiculopathy of the bilateral lower extremities is part and parcel of the initial increased rating claim for the Veteran's lumbar spine disability. 

As noted above, effective September 23, 2002, the rating criteria for specifically contemplated assigning separate ratings for orthopedic and neurological manifestations of lumbar spine disability. This addition was also included in the changes made effective September 26, 2003. However, the Board notes that nothing precluded the assignment of separate ratings for neurological and orthopedic manifestations in the version in effect prior to September 23, 2002. In particular, the Board notes that, although Diagnostic Code 5293 contemplated neurological manifestations such as to render a separate rating for radiculopathy in violation of 38 C.F.R. § 4.14 (2013), Diagnostic Code 5295 appears to contemplate no neurological manifestations. Thus, as the Board has rated the Veteran during that period using Diagnostic Code 5295, the Board has considered whether a separate rating for radiculopathy is warranted at any time during the period under consideration.

Diagnostic Code 8520 provides the rating criteria for paralysis of the sciatic nerve. Mild incomplete paralysis of the sciatic nerve warrants a 10 percent rating. A 20 percent rating requires moderate incomplete paralysis of the sciatic nerve. A 40 percent rating requires moderately severe incomplete paralysis of the sciatic nerve. A 60 percent rating requires severe incomplete paralysis with marked muscular atrophy. An 80 percent rating requires complete paralysis. When there is complete paralysis, the foot dangles and drops, no active movement of the muscles below the knee is possible, and flexion of the knee is weakened or (very rarely) lost. 38 C.F.R. § 4.124a. 

The term "incomplete paralysis" with peripheral nerve injuries indicates a degree of loss or impaired function substantially less than the type pictured for complete paralysis given with each nerve, whether due to the varied level of the nerve lesion or to partial regeneration. When the involvement is wholly sensory, the rating should be for mild, or at most, the moderate degree. See note at "Diseases of the Peripheral Nerves" in 38 C.F.R. § 4.124(a).

Neuritis, cranial or peripheral, characterized by loss of reflexes, muscle atrophy, sensory disturbances, and constant pain, at times excruciating, is to be rated at a maximum equal to severe, incomplete, paralysis. 38 C.F.R. § 4.123 (2013). The maximum rating which may be assigned for neuritis not characterized by organic changes referred to in this section will be that for moderate, or with sciatic nerve involvement, for moderately severe, incomplete paralysis. Id.

 From February 19, 2002, to September 24, 2013 

The Board finds all reasonable doubt in the Veteran's favor and awards a 10 percent rating for radiculopathy of the right lower extremity from February 19, 2002, to September 24, 2013. The Board finds, however, that during this timeframe, lumbar radiculopathy of the left lower extremity was not shown. 

In this regard, throughout this period, the Veteran has reported radiation of pain, mild decreased strength, and tingling in his right lower extremity. For example, in an October 2005 emergency room visit, the Veteran reported tingling in the right foot. In an April 2007 VA examination, the Veteran reported pain that occasionally radiated down his right leg. On examination, there was some mild decreased strength of the hip flexors and knee extensors. The Veteran was able to stand on his heels and toes, and the sensory examination was grossly intact. Deep tendon reflexes were 1+ and equal in the knees and 2+ and equal in the ankles. In an August 2008 treatment record, the Veteran noted some radicular pain into the right lower extremity. In a July 2009 VA examination, there was no evidence of radiating pain on movement. There were no sensory deficits from L1-L5 or at S-1. There was no lumbosacral motor weakness. The right and left lower extremities revealed knee and ankle jerk at 2+. In a September 2009 treatment record, the Veteran noted pain radiating down his right leg. In September 2010, the Veteran complained of pain radiating to the back of the right knee. In February 2011, the Veteran's strength and sensation were intact. In an August 2011 treatment record, the Veteran was assessed with lumbar radiculopathy. He denied lower extremity weakness, bowel or bladder incontinence, lower extremity dysesthesias or paresthesias, or saddle anesthesia. He had normal light touch sensation to the bilateral lower extremities.

Given the consistent reports of radiating pain in the right lower extremity, the Board finds all reasonable doubt in the Veteran's favor and a separate 10 percent disability rating is warranted for the right lower extremity for mild, incomplete paralysis of the sciatic nerve.

The Board notes, however, that there is no indication during this period, that the incomplete paralysis of the right lower extremity was any more than mild in nature. Throughout the timeframe on appeal, sensory examinations were usually intact. In general, the Veteran's motor examinations have revealed normal tone and strength in the bilateral lower extremities, with intermittent findings of decreased deep tendon reflexes and mild decreased strength in the hip flexors and knee extensors. Although the Veteran is competent to describe radiating pain down to his right knee and sometimes into his right foot, the consistent lack of significant objective findings weighs against granting a rating in excess of 10 percent for the right lower extremity. In other words, for the period from February 19, 2002, to September 24, 2013, his radiculopathy symptoms in the right lower extremity were no more than mild in nature. 

Furthermore, the Board finds that during this timeframe, lumbar radiculopathy of the left lower extremity was not shown to a compensable degree, as the majority of the Veteran's complaints were almost exclusively in regard to the right lower extremity. 

Resolving all doubt in favor of the Veteran, the Board finds that, from February 19, 2002, to September 24, 2013, a separate 10 percent disability rating is warranted for associated mild, incomplete paralysis of the sciatic nerve in the right lower extremity. However, the preponderance of the evidence is against a disability rating in excess of 10 percent from February 19, 2002, to September 24, 2013, for the right lower extremity. Additionally, during this timeframe, a preponderance of the evidence is against a compensable rating for radiculopathy of the left lower extremity.

 After September 24, 2013

The Board finds that, for the period after September 24, 2013, the Veteran's symptoms do not rise to the level of moderately severe incomplete paralysis, as would be required for a higher rating under Diagnostic Code 8520. No clinician has ever characterized the radiculopathy of the Veteran's lower extremities as "moderately severe" or worse. The Veteran's impairment has primarily involved mild intermittent pain, sensory and reflex impairment, mild numbness, and mild paresthesias, without muscle atrophy or loss of the ability to ambulate. The Board finds that such impairment is not of a degree approximating moderately severe incomplete paralysis, and disability ratings in excess of 20 percent for the each lower extremity is not warranted.

In this regard, the June 2014 VA examination reflected complaints of frequent flare-ups of back pain, with pain radiating into the right lower extremity with occasional weakness. However, the Veteran did not have muscle atrophy. Muscle strength was 3/5 in the right hip, knee, and ankle. Muscle strength was 4/5 in the left hip, left knee, and right toe. Muscle strength was 5/5 in the right and left ankle plantar flexion, left ankle dorsiflexion, and left toe. Deep tendon reflexes were 3+. Sensation was decreased in the right lower leg/ankle and the right foot/toes. The Veteran's right foot was absent monofilament sensation, but vibration was intact bilaterally. The straight leg raise test was negative. The Veteran had the following symptoms due to radiculopathy: mild intermittent pain, mild paresthesias and/or dyesthesias, and mild numbness in the bilateral lower extremities. There were no other neurologic abnormalities. Based on the foregoing, the Board finds that the evidence does not show that the Veteran's lumbar radiculopathy of the bilateral lower extremities is manifested by symptomatology that more nearly approximates the criteria for an evaluation of 40 percent under DC 8520, and that the preponderance of the evidence is against an increased rating. 

It is important for the Veteran to understand that the Board has carefully considered his accounts of the radicular symptoms that he has experienced. If the problems he has cited were not considered, there would be no basis for the currently-assigned disability ratings. Upon careful consideration of the evidence of record, however, the Board finds that the preponderance of the evidence is against the assignment of ratings greater than 20 percent for lumbar radiculopathy of the lower extremities. 38 U.S.C.A. § 5107(b) (West 2002); Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

VI. Extraschedular Consideration

While the Board does not have authority to grant an extraschedular rating in the first instance, the Board does have the authority to decide whether the claim should be referred to the VA Director of Compensation for consideration of an extraschedular rating. 38 C.F.R. § 3.321(b)(1). The governing norm for an extraschedular rating is a finding that the case presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or necessitated frequent periods of hospitalization so as to render the regular schedular standards impractical.
 
The threshold factor for extraschedular consideration is a finding that the evidence presents such an exceptional disability picture that the available schedular rating for the service-connected disability is inadequate. There must be a comparison between the level of severity and symptomatology of the service-connected disability with the established criteria. 
 
If the criteria reasonably describe the Veteran's disability level and symptomatology, then the disability picture is contemplated by the Rating Schedule, and the assigned schedular evaluation is, therefore, adequate, and no referral is required. Thun v. Peake, 22 Vet. App. 111 (2008).
 
Here, the rating criteria reasonably describe the Veteran's disability level and symptomatology pertaining to his degenerative disc disease with IVDS and lumbar radiculopathy of the bilateral lower extremities. The Veteran's degenerative disc disease with IVDS is manifested by radiating pain, limitation of motion, and prescribed bed rest. The ratings assigned contemplate these impairments. For these reasons, the disability picture is contemplated by the Rating Schedule, and the assigned schedular ratings are, therefore, adequate. Consequently, referral for extraschedular consideration is not required under 38 C.F.R. § 3.321(b)(1).



ORDER

For the period prior to June 12, 2014, entitlement to an evaluation of 20 percent, but not higher, for degenerative disc disease of the lumbar spine is allowed, subject to the regulations governing the award of monetary benefits.

For the period after June 12, 2014, entitlement to a rating higher than 40 percent for degenerative disc disease with IVDS is denied. 

For the period prior to September 24, 2013, entitlement to an evaluation of 10 percent, but not higher, for lumbar radiculopathy of the right lower extremity is allowed, subject to the regulations governing the award of monetary benefits.

For the period prior to September 24, 2013, entitlement to a compensable evaluation for lumbar radiculopathy of the left lower extremity is denied.

For the period after September 24, 2013, entitlement to a rating in excess of 20 percent for lumbar radiculopathy of the bilateral lower extremities is denied.



____________________________________________
MICHAEL LANE
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs